**Michael Anthony DAMMONS,
Petitioner,**

v.

**Thomas R. CARROLL, Supt.
of Johnston Correctional
Inst., Respondents.**

**No. 1:04 CV 00205.**

United States District Court,
M.D. North Carolina.

Oct. 5, 2004.

---

Bruce Tracy Cunningham, Jr., Cunningham Dedmond Petersen & Smith, Southern Pines, NC, for Plaintiff.

Clarence Joe Delforge, III, N. C. Department of Justice, Raleigh, NC, for Defendant.

## O–R–D–E–R

BEATY, District Judge.

On August 13, 2004, in accordance with 28 U.S.C. § 636(b), the Recommendation of the United States Magistrate Judge was filed and notice was served on the parties in this action and a copy was given to the court.

Within the time limitation set forth in the statute, Petitioner objected to the Recommendation.

The court has appropriately reviewed the portions of the Magistrate Judge's report to which objection was made and has made a de novo determination which is in accord with the Magistrate Judge's report. The court hereby adopts the Magistrate Judge's Recommendation.

**IT IS HEREBY ORDERED AND ADJUDGED** that Respondent's motion for summary judgment [Pleading no. 6] be **GRANTED**, that Petitioner's motion for summary judgment [Pleading no. 8] be **DENIED**, and that this action be, and is hereby, dismissed with prejudice. Finding no substantial issue for appeal concerning the denial of a constitutional right affecting the conviction, nor a debatable procedural ruling, a certificate of appealability is not issued.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

DIXON, United States Magistrate Judge.

This matter is before this court on Respondent's motion for summary judgment (docket no. 6) and Petitioner's cross-motion for summary judgment (docket no. 8). Petitioner has responded to Respondent's motion in the same document in which he raised his cross motion (docket no. 8). Likewise, Respondent has responded to the cross-motion (docket no. 9). In this posture, these matters are ripe for decision.

### Background

Petitioner is a prisoner of the State of North Carolina who has filed a petition for writ of habeas corpus (docket no. 3) claiming that his conviction is infirm because he was considered presumptively guilty of driving while impaired (DWI) and assault with a deadly weapon inflicting serious injury (AWDWISI) in violation of the Due

Process Clause, and that his sentencing is infirm because the Rule of Lenity prohibits sentencing in the aggravated range without the finding of an aggravator. After trial by jury in the Superior Court of Lee County, Honorable John R. Jolly, judge presiding, Petitioner was convicted of DWI, AWDWISI, and exceeding the posted speed limit. Because of his criminal history, he was sentenced as a habitual felon.

Petitioner appealed to the North Carolina Court of Appeals. The claims which he makes here are similar to some of his assignments of error on appeal. *See* Record on Appeal pp. 61–64, error nos. 2 and 11. The appellate court overruled these assignments of error and affirmed the trial court's decision in an unpublished opinion. *State v. Dammons*, 153 N.C.App. 812, 571 S.E.2d 87, 2002 WL 31461038 (2002). The North Carolina Supreme Court denied discretionary review. 356 N.C. 684, 578 S.E.2d 313 (2003).

### *ANALYSIS*

### *1. Summary Judgment Standard*

■ In a habeas case, a set of allegations is not entitled to an evidentiary hearing just because it is, on its face, not without merit. *Blackledge v. Allison*, 431 U.S. 63, 80, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). Rather, "[a]s in civil cases generally, there exists a procedure whose purpose is to test whether facially adequate allegations have sufficient basis in fact to warrant plenary presentation of evidence. That procedure is, of course, the motion for summary judgment." *Id.* Summary judgment is appropriate when there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Zahodnick v. International Bus. Machs. Corp.*, 135 F.3d 911, 913 (4th Cir.1997). The party seeking summary judgment bears the burden of initially coming forward and demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the non-moving party must then affirmatively demonstrate that there is a genuine issue of material fact which requires trial. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a fact-finder to return a verdict for that party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Sylvia Dev. Corp. v. Calvert County, Md.*, 48 F.3d 810, 817 (4th Cir.1995). Thus, the moving party can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim. *Celotex Corp.*, 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting). When making the summary judgment determination the court must view the evidence, and all justifiable inferences from the evidence, in the light most favorable to the non-moving party. *Zahodnick*, 135 F.3d at 913; *Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 196 (4th Cir.1997).

■ It is too glib, however, simply to say that the standard formulation for assessing summary judgment in the run-of-the-mill civil case applies in all habeas cases. For example, the usual summary judgment analysis contemplates accepting the evidence and all justifiable inferences from the evidence in the light most favorable to the non-movant. In the habeas context, however, if there is a contention that the evidence at trial does not support the underlying conviction, the appropriate standard calls for viewing the evidence in the light most favorable to the prosecution

and according the prosecution the benefit of all reasonable inferences from the evidence, and in that light, determining if any rational trier of fact could have found the petitioner guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). By way of another example, in a habeas claim of ineffective assistance of counsel, a federal court "must indulge a strong presumption that counsel's conduct was reasonable, and … the petitioner must overcome the presumption that the challenged conduct may have been sound trial strategy." *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Nevertheless, the point is that habeas cases are subject to a summary judgment analysis as are all civil cases. *See* Rule 11, Rules Governing Section 2254 Cases In The United States District Courts; *see also Maynard v. Dixon,* 943 F.2d 407, 412–13 (4th Cir.1991) (FED. R. CIV. P. 56 applies to habeas proceedings); *but cf.,* 17A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4268 (2d ed. 1988) ("The procedure of applications for habeas corpus for state prisoners is a confusing amalgam, to be found in a variety of different sources. There are a number of procedural provisions in the habeas corpus statutes themselves.").

### 2. Habeas Corpus Standard

In order for Petitioner to establish a habeas claim in this court, he would have to show that the state court's judgment: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1) & (2). Therefore, Respondent can prevail by demonstrating that the decision of the state court was neither contrary to established Federal law as determined by the United States Supreme Court, nor based on an unreasonable determination of the facts in light of the evidence presented during trial. *Cf. Celotex Corp.,* 477 U.S. at 331, 106 S.Ct. 2548 (Brennan, J., dissenting) (Respondent, as the moving party, can bear his burden either by presenting affirmative evidence or by demonstrating that the non-moving party's evidence is insufficient to establish his claim.).

### 3. The Claims

**1. The defendant was considered presumptively guilty of DWI and AWDWISI in violation of the due process clause**

Plaintiff contends that his conviction is infirm because he was considered presumptively guilty of DWI and AWDWISI in violation of the Due Process Clause. There are two means for a individual to commit the offense of impaired driving in North Carolina:

(a) Offense.—A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:

(1) While under the influence of an impairing substance; or

(2) After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more.

N.C. GEN. STAT. §§ 20–138.1. At trial, although the jury convicted Petitioner of driving while impaired under this statute, the jury was not required to, and did not, make any findings of actual impairment. Petitioner concedes his guilt under the second prong of the statute. Nevertheless, he argues that it is a violation of the Due

Process Clause for the state to use guilt under this prong as the basis for a charge of assault with a deadly weapon when there was no finding of actual impairment.

Both parties have moved for summary judgment, claiming that there is no issue of material fact regarding this claim. Therefore, this court must decide whether there are any issues of material fact as well as which party prevails if no issue exists. This court must first, however, carefully define the question at hand.

A. *Is the question: "On which prong of the DWI statute does Defendant's conviction really rest?"*

The state court of appeals answers this question, rather than the question of whether the state may use guilt under the second prong of the DWI statute as a basis for a charge of assault with a deadly weapon when there is no finding of actual impairment. *Dammons*, 153 N.C.App. 812, 571 S.E.2d 87, 2002 WL 31461038, *3 ("We do not reach the issue of whether a conviction solely under the second prong of N.C. Gen.Stat. §§ 10–138.1 without other evidence of impairment is sufficient to supply the 'willful' element of defendant's assault with a deadly weapon inflicting serious injury conviction."). The appellate court found that there was sufficient evidence such that a jury *could have* convicted Petitioner of actual impairment and noted that "[t]here is no evidence that the 'per se' violation that defendant complains of under the second prong ... is the sole basis for his impaired driving conviction." If, as the appellate court suggests, Petitioner's conviction does not rest on the second prong of the DWI statute, then there is no issue of material fact as to whether conviction under that prong can bring the requisite intent for an assault conviction.

Nevertheless, this court will not base its analysis on the contention that Petitioner's conviction does not rest on the second prong of the DWI statute. Petitioner

asked for and was denied a bifurcated verdict with instructions that the jury could convict of assault only if they found that Petitioner was driving while actually impaired; and the jury did not find that Petitioner was actually impaired. Contrary to the court of appeals, this court believes that this is evidence that "the 'per se' violation that [Petitioner] complains of under the second prong ... is the sole basis for his impaired driving conviction." *See* 153 N.C.App. 812, 571 S.E.2d 87, 2002 WL 31461038, *3. Likewise, perhaps there is a legitimate question whether the court of appeals could find that Petitioner was actually intoxicated when the jury did not make such a finding of fact. Naturally, it is not the function of the court of appeals to make findings of fact. *Horton v. Horton*, 12 N.C.App. 526, 183 S.E.2d 794 (1971). It is clear, then, that at this juncture this court will accept that the jury both convicted Petitioner under the second prong of the statute and did not find Petitioner to be actually impaired. It is for this reason that the following question is posed.

B. *Is the question: "May the state use guilt under the second prong of the DWI statute as a basis for a charge of assault with a deadly weapon inflicting serious injury when there is no finding of actual impairment?"*

■ Proceeding with the understanding that the trial court clearly found Petitioner's intoxication under the second prong of the DWI statute, this court focuses on Petitioner's claim that the state may not use guilt under the second prong of the DWI statute as a basis for a charge of assault with a deadly weapon inflicting serious injury when there is no finding of actual impairment. Petitioner claims that such reliance on the second prong of the statute is reliance on a finding of *per se*

guilt. This, he claims, is a due process violation.

Respondent, in moving for summary judgment, relies heavily on the opinion of the court of appeals, which, as discussed above, does not attempt a due process analysis on this issue. After quoting the court at length, Respondent asserts that the opinion was not contrary to, nor did it involve an unreasonable application of, clearly established federal law; and that the contention should be deemed barred by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Unfortunately, however, no obvious constitutional analysis has been performed. Perhaps more significantly in light of this court's approach, no clear explanation has been offered as to why a constitutional analysis may be unnecessary.

■■■ Contemplating a constitutional analysis of the question at hand, this court notes that it is well settled in North Carolina that an automobile can be a deadly weapon if it is driven in a reckless or dangerous manner. *See, e.g., State v. Eason*, 242 N.C. 59, 65, 86 S.E.2d 774, 779 (1955). It is equally well settled that a driver who operates a motor vehicle so that it becomes a deadly weapon, "thereby proximately causing serious injury to another, may be convicted of AWDWISI" if there is either actual intent to inflict injury or, in the alternative, culpable or criminal negligence from which such intent may be implied. *State v. Jones*, 353 N.C. 159, 164–65, 538 S.E.2d 917, 923 (2000) (citing *Eason*, 242 N.C. at 65, 86 S.E.2d at 778); *see also State v. Currie*, 19 N.C.App. 17, 198 S.E.2d 28 (1973) ("Intent is not an element of . . . assault with a deadly weapon inflicting serious injury."). No argument has been presented that Petitioner actually intended to assault and injure the victim. Therefore, this court must examine intent implied from culpable or criminal negligence.

■■■ Culpable or criminal negligence has been defined as "such recklessness or carelessness, proximately resulting in injury or death, as imports a thoughtless disregard of consequences or a heedless indifference to the safety and rights of others." *Jones*, 353 N.C. at 165, 538 S.E.2d at 923 (quoting *State v. Weston*, 273 N.C. 275, 280, 159 S.E.2d 883, 886 (1968) (quoting *State v. Cope*, 204 N.C. 28, 30, 167 S.E. 456, 458 (1933))). As the court of appeals aptly pointed out in this case, the court in *Jones* noted that "[N.C. Gen.Stat.] §§ 20–138.1, which prohibits drivers from operating motor vehicles while under the influence of impairing substances, is a safety statute designed for the protection of human life and limb and that its violation constitutes culpable negligence as a matter of law." *Dammons*, 153 N.C.App. 812, 571 S.E.2d 87, 2002 WL 31461038, at *2 (citing Jones, 353 N.C. at 165, 538 S.E.2d at 923 (citing *State v. McGill*, 314 N.C. 633, 637, 336 S.E.2d 90, 93 (1985))). Therefore, according to North Carolina law, one who drives while intoxicated—which means either driving in a condition which demonstrates being actually intoxicated or driving with a blood/alcohol level at or above 0.08—acts with culpable negligence in breaking a safety statute. If the impaired driver is involved in a car accident with another and is the proximate cause of the other's injuries, his culpable negligence provides the implied intent required to bring a charge of AWDWISI.

These conclusions about North Carolina law lead this court to the point where constitutional analysis might begin in answering the question whether the Due Process Clause prohibits the state from "us[ing] guilt under the second prong of the DWI statute as a basis for a charge of assault with a deadly weapon inflicting serious injury when there is no finding of actual impairment." Petitioner's distinction between the first and second prongs

of the statute seems only to muddy the waters, and not clarify his concern, for each prong is merely an alternative method of finding impairment.

Nevertheless, his insistence on this distinction seems to be the crux of Petitioner's complaint. He wants this court to find that there is something about the nature of a statute that imposes guilt through a numerical measurement—or some other *per se* qualification—that constitutionally disqualifies it from carrying the intent requisite for AWDWISI. It is at this very convergence of the explanation of state law, exploration of Petitioner's claim, and attempt to begin a due process analysis that it becomes clear that a constitutional analysis is, in fact, unnecessary. Petitioner has no claim.

Petitioner fails to realize what the state law so clearly sets forth: that intent—at least the kind that might be compromised by a *per se* statute—is not required at all for AWDWISI. Rather, one can be rightfully charged with AWDWISI according to the intent implied by the culpably negligent violation of a safety statute such as the one Petitioner has been found guilty of violating. Petitioner's argument that it is unconstitutional to use guilt under what he characterizes as a *per se* statute to find intent for an assault charge has no merit because this specific assault charge—an AWDWISI charge—can rest entirely on implied intent.

In his error, Petitioner has failed to state a claim. The state court's decision was neither contrary to clearly established Federal law, nor was based on an unreasonable determination of the facts in light of the evidence presented. For this reason, this court recommends that summary judgment be granted in favor of Respondent.

2). *The Rule of Lenity prohibits the granting of a sentence that falls in both the aggravated and presumptive range without a specific finding of an aggravating factor*

█ ] Petitioner argues that not only his conviction, but his sentencing also, was unconstitutional. Petitioner challenges on the 116–149–month imprisonment imposed for the conviction. On its face, the sentence as imposed is within both the presumptive range and the aggravated range. Petitioner argues, therefore, that he received an aggravated sentence without the court finding aggravating factors.

Petitioner contends that the rule of lenity prohibits the imposition of a sentence that falls in both the aggravated and presumptive range without a specific finding of an aggravating factor. Respondent, in opposition, argues that Petitioner's assertions should be summarily denied for a handful of reasons. This court's independent analysis leads to the conclusion that Respondent is correct.

█ Petitioner argues that a sentencing structure which contains an overlap in the presumptive and aggravated ranges is ambiguous. The rule of lenity holds that a court should adopt the construction of an ambiguous statute that is most favorable to the defendant. *See, e.g., Chapman v. United States*, 500 U.S. 453, 463, 111 S.Ct. 1919, 114 L.Ed.2d 524 (1991); *United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971); *United States v. Horton*, 321 F.3d 476, 479 (4th Cir.2003). Petitioner asserts that the rule of lenity should have required the trial court to interpret the alleged ambiguous sentencing statute in Petitioner's favor, resulting in a finding of the mitigating factors that were offered into evidence, and thus potentially reduce Petitioner's term of imprisonment.

■ This court notes that the rule of lenity is a canon of statutory construction, not a federal law of its own standing. *See. United States v. Lambey,* 974 F.2d 1389, 1398 (4th Cir.1992); *Chapman,* 500 U.S. at 463, 111 S.Ct. 1919; *Huddleston v. United States,* 415 U.S. 814, 831, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974); *see also Lurie v. Wittner,* 228 F.3d 113, 126 (2d Cir. 2000) ("The rule of lenity is a canon of statutory construction, not in itself a federal law."). "Federal courts cannot apply such a canon of construction to state statutes except to serve a federal constitutional interest." *Lurie,* 228 F.3d at 126. Therefore, the rule of lenity can, in certain circumstances, be applied to state statutes by federal courts. *Id.*

■ Nevertheless, as noted, the circumstances under which federal courts can apply the rule of lenity to state statutes are limited to those times when doing so would serve a federal constitutional interest. *See, e.g., id.* ("On the ground that the rule of lenity is a canon of construction rather than a federal law, at least two circuits have determined—and we see no Supreme Court case law to the contrary—that federal courts cannot vacate a state conviction on lenity grounds unless a state criminal statute (i) is unconstitutionally vague, or (ii) otherwise fails to give constitutionally required 'fair notice.' "). Even then, in order to apply the rule of lenity, there must be a "grievous ambiguity or uncertainty in the language and structure of the [statute]." *Chapman,* 500 U.S. at 463, 111 S.Ct. 1919 (quoting *Huddleston,* 415 U.S. at 831, 94 S.Ct. 1262); *see also Lambey,* 974 F.2d at 1398. Furthermore, in a number of cases, the Supreme Court has emphasized that ambiguity is not to be created, only fixed, by application of the rule. *See Callanan v. United States,* 364 U.S. 587, 596, 81 S.Ct. 321, 5 L.Ed.2d 312 (1961); *see also Barrett v. United States,* 423 U.S. 212, 96 S.Ct. 498, 46 L.Ed.2d 450

(1976); *Huddleston,* 415 U.S. at 830–32, 94 S.Ct. 1262.

Respondent argues that the rule of lenity does not apply because the sentencing structure is not ambiguous. Respondent quotes at length the opinion of the court of appeals (*State v. Dammons,* 2002 WL 31461038) which holds that there is no error in assigning this particular sentence without the finding of aggravating factors. Respondent's Brief, p. 10 (docket no. 7). Respondent also points to two other North Carolina state cases that have held that such overlap is not "ambiguity" and not a constitutional violation. Respondent's Brief, p. 11 (docket no. 7) (citing *State v. Ramirez,* 156 N.C.App. 249, 576 S.E.2d 714, *review denied* 357 N.C. 255, 583 S.E.2d 286, *cert. denied,* —— U.S. ——, 124 S.Ct. 487, 157 L.Ed.2d 388 (2003); *State v. Streeter,* 146 N.C.App. 594, 553 S.E.2d 240 (2001), *review denied* 356 N.C. 312, 571 S.E.2d 211 (2002), *cert. denied,* 537 U.S. 1217, 123 S.Ct. 1319, 154 L.Ed.2d 1071 (2003).

There is no clearly established federal law that would render the state court's decision erroneous or require a finding that the challenged sentencing structure is ambiguous. There is simply no "grievous ambiguity or uncertainty in the language and structure of" the North Carolina sentencing guidelines: there are mitigated, presumptive, and aggravated ranges, and sometimes their minimums and maximums overlap. Nor was the state court adjudication based on an unreasonable determination of facts in light of the evidence presented in the state court proceeding. There is no issue of material fact and this court will recommend that summary judgment be granted in favor of Respondent on this claim. Likewise, this court will recommend that Petitioner be denied summary judgment on this claim.

### *Conclusion*

For the reasons discussed above, IT IS RECOMMENDED that Respondent's Motion For Summary Judgment (docket no. 6) be GRANTED, that Petitioner's Motion For Summary Judgment (docket no. 8) be DENIED, and that this case be DISMISSED WITH PREJUDICE.

August 13, 2004.